# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0016-20

N.P.,[1]

    Plaintiff-Appellant,

v.

A.O.,

    Defendant-Respondent.

_____

Submitted May 10, 2021 – Decided May 24, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1440-16.

Rutgers Law School, attorneys for appellant (Amy Braunstein, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials for the parties and pseudonyms for the children to protect their privacy. R. 1:38-3(d)(10).

Plaintiff appeals from an August 28, 2020 order denying her motion for reconsideration of a June 26, 2020 order and a July 6, 2020 supplemental order granting defendant supervised parenting time with his biological daughter. We vacate all orders awarding parenting time to defendant and remand the matter to the Family Part to conduct a new hearing. Prior to the new hearing, plaintiff shall be allowed to conduct discovery and review expert reports related to defendant's exercise of parenting time.

The facts are as follows. The parties were together for several years prior to marrying on November 19, 2010. They had one child together, Mary, born July 2011. Plaintiff has another daughter, Beth, born March 2003. Defendant is not Beth's biological father and never adopted her. Since the age of five, defendant served as a "father figure" to Beth.

The parties divorced in 2016. Despite divorcing, the couple moved into a home together in 2018 "with the hope of providing a better environment for the[ir daughters]" and continued to "co-parent" both children.

After the parties divorced but were living together, plaintiff discovered defendant sexually abused Beth after reading a text message defendant sent to Beth. Plaintiff confronted defendant regarding his text message. Beth then told her mother defendant was sexually abusing her.

2

Plaintiff immediately went to the police station with Beth to report defendant's sexual abuse. Beth told the police she had been abused at least four times by defendant and each incident happened in home the couple shared.

Defendant was charged with endangering the welfare of a child and aggravated sexual assault. While in police custody, defendant confessed to sexually abusing Beth.

After defendant's arrest, Beth's younger sister, Mary, became "withdrawn and timid." She noticed Beth frequently "crying and upset." Mary asked plaintiff what happened to her father. Plaintiff "reluctant[ly]" told Mary "in an age[-]appropriate conversation[] that Daddy had done something bad and he admitted to it [so] he ha[d] to go away for a while."

On January 8, 2019, plaintiff filed a pro se motion in the Family Part seeking sole legal custody of Mary and suspension of defendant's parenting time with Mary "until a risk assessment, psychological evaluation and sexual evaluation [we]re completed at defendant's sole cost." In an April 12, 2019 order, after receiving a report from the Division of Child Protection and Permanency (DCPP) recommending defendant have no contact with Mary, the family court judge granted plaintiff's motion.

A-0016-20

On April 30, 2019, defendant filed a motion for reconsideration. He also requested parenting time and joint legal custody of Mary.

The matter was heard by the judge on June 7, 2019. Plaintiff appeared pro se, and defendant appeared with counsel. Defendant requested supervised parenting time with Mary, emphasizing to the judge he would soon be incarcerated for a lengthy time period and sought to maintain a relationship with his biological daughter.[2]

Plaintiff opposed defendant's exercising parenting time with Mary and expressed concern for Mary's mental and physical well-being. Plaintiff told the judge Mary was "afraid of [defendant]." The judge asked plaintiff why that information was not included in the opposition papers. Plaintiff explained Mary first learned about defendant's abuse of Beth "the other day." When asked how Mary learned of the abuse, plaintiff admitted discussing the issue with her younger daughter.

Plaintiff and the judge then exchanged a heated colloquy. The judge questioned plaintiff's decision to tell Mary about defendant's sexual abuse of Beth, deeming it "not a wise choice." Plaintiff tersely responded she would not

---

[2] Based on the pending criminal charges, defendant was prohibited from having any contact with Beth.

A-0016-20

"lie to [her] daughter anymore." The judge replied the situation was a hard enough for a grown woman to process, let alone a young child. Plaintiff rejoined, "[T]hat's my call whether or not . . . I tell my daughter . . . ." Having the final word, the judge stated, "You're absolutely right, so you may have caused [Mary] damage, but that's on you."

In her June 7, 2019 order, the judge held defendant's pretrial detention release order related to the criminal charges did not prohibit his exercising supervised parenting time with Mary. The judge ordered Mary to undergo an evaluation with a court-appointed therapist and explained she intended to follow the therapist's recommendations "with regard to if and/or when the defendant may begin to exercise supervise[d] parenting time as well as telephone contact with the child." The judge also granted defendant joint legal custody of Mary "so long as he [wa]s not incarcerated." In addition, the judge allowed defense counsel and plaintiff to review the DCPP's report under a protective order.

The therapist submitted a written report to the judge on August 23, 2019. Based on the therapist's report, the judge issued an August 29, 2019 order, sua sponte, directing the parties to "immediately schedule" trauma-focused therapy for Mary and "immediately schedule family therapy . . . to support [p]laintiff and the two children." Contingent on receipt of mental health treatment and

5

recommendations of defendant's medical professionals, the judge granted defendant supervised parenting time with Mary "until his incarceration." The order required the parties to be "diligent in safeguarding the children from re-exposure to further trauma, and should make all efforts to keep parent to parent contact out of the children's awareness." All other terms of the June 7, 2019 order "remain[ed] in full force in effect."

On March 10, 2020, defendant moved to enforce the June 7, 2019 order. In April 2020, plaintiff retained counsel. At that time, plaintiff's newly retained counsel attempted to review the DCPP's report under a protective order. Plaintiff's counsel was informed the DCPP's report had to be reviewed in camera, but the courthouse was closed due to the COVID-19 pandemic. Plaintiff's counsel subsequently followed up on the request for access to the DCPP's report. Counsel also asked if defendant's risk assessment, psychological evaluation, and sexual evaluation had been completed.

On May 22, 2020, plaintiff's counsel asked the court to confirm completion of defendant's assessments and requested review of those assessments and the DCPP's report. The judge advised "[p]laintiff had been made aware of the evaluations and, after arrangements had been made for her to view the documents, she failed [twice] to come to [c]ourt and review them."

A-0016-20

In a certification dated June 11, 2020, plaintiff's counsel certified she had never been allowed to review the DCPP's report or any other evaluations of defendant. In addition, plaintiff certified she was unable to review the DCPP report at the courthouse because she could not take off from work for fear of losing her job.

On June 11, 2020, plaintiff filed a cross-motion requesting dismissal of defendant's motion to enforce parenting time and suspension of his parenting time or, alternatively, "[m]odify [p]arenting time/[s]tay [p]arenting [t]ime until counsel can review the documents under a protective order."

On June 26, 2020, the judge issued a written "post-judgment order," granting defendant supervised parenting time "contingent on his on-going mental health treatment and with the recommendation(s) of his physician(s) that supervised parenting may proceed." The judge required defendant to furnish to plaintiff proof of his continued mental health treatment. She denied plaintiff's request to stay or modify parenting time until plaintiff's counsel could review the DCPP's report and other assessments and records. Further, the judge ordered plaintiff to resume therapy and provide proof of Mary's treatment because plaintiff admitted Mary stopped attending therapy in September 2019.

A-0016-20

In a July 6, 2020 "supplemental post-judgment order," the judge stated defendant provided emails from his therapist, confirming defendant attended therapy regularly. The judge's order explained defendant's therapist expressed "no concerns with supervised visitation with [Mary]" and "permitted supervised phone/FaceTime parenting time and in-person parenting time" between defendant and Mary.

The next day, plaintiff's attorney filed a motion for reconsideration. In the motion, counsel asserted the judge failed to consider the impact defendant's exercise of parenting time with Mary would have on the relationship between the siblings. Plaintiff believed allowing defendant to exercise parenting time with Mary would re-traumatize both daughters. Plaintiff also sought to compel defendant's payment of therapy for the children. Defendant opposed plaintiff's motion and requested plaintiff be held in contempt of court for failing to comply with previous orders.

On July 27, 2020, defendant pleaded guilty to aggravated assault of a minor while acting in loco parentis. Pending sentencing, defendant was ordered to register as a sex offender.

On August 28, 2020, one month after defendant's guilty plea to aggravated sexual assault, the Family Part judge heard counsels' arguments regarding

8

defendant's exercise of parenting time with Mary. Plaintiff argued the judge failed to protect the best interests of Mary and Beth. She further claimed the New Jersey Constitution allowed crime victims the right to be heard, and Beth was not accorded an opportunity to speak to the judge. In addition, because defendant pleaded guilty to aggravated sexual assault of a minor, plaintiff asserted the Fathered by Rape statute, N.J.S.A. 9:2-4.1, applied and the record lacked clear and convincing evidence defendant's exercise of parenting time was in Mary's best interest. [3]

After hearing the arguments, the judge denied reconsideration. The judge explained the court-appointed therapist reviewed the information provided by the parties, spoke with the parties and the children, and considered the "family dynamic." The judge deferred to the "thorough and thoughtful report" prepared by the therapist and ordered defendant's supervised parenting time to proceed as scheduled.[4] The judge also reprimanded plaintiff for "tak[ing] matters into her own hands and violat[ing] [c]ourt orders" and "traumatizing" Mary. In denying

---

[3] This statute requires persons "convicted" of certain crimes against minors be precluded from exercising parenting time unless there is "clear and convincing evidence" that parenting time would be in the best interest of the child.

[4] Defendant's supervised parenting time was scheduled to start August 29, 2020 and continue every week until his incarceration.

A-0016-20

reconsideration, the judge ruled N.J.S.A. 9:2-4.1 was "not applicable at this juncture." The judge also denied plaintiff's request for a stay under N.J.S.A. 9:2-4.1.

On appeal, plaintiff argues the judge erred in failing to consider defendant's guilty plea as a conviction under N.J.S.A. 9:2-4.1. She also claims the judge erred in denying her attorney access to the DCPP's report and other reports related to defendant's exercise of parenting time. In addition, plaintiff asserts the judge should have considered the relationship between Mary and Beth and allowed Beth to provide a victim's impact statement to the court. We partially agree.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any

special deference." Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

Plaintiff argues the judge erred in deeming the Fathered by Rape statute, N.J.S.A. 9:2-4.1, was inapplicable and awarding defendant parenting time with Mary pending his incarceration. N.J.S.A. 9:2-4.1 provides:

> Notwithstanding any provision of law to the contrary, a person convicted of sexual assault under N.J.S.[A.] 2C:14-2 shall not be awarded the custody of or visitation rights to any minor child, including a minor child who was born as a result of or was the victim of the sexual assault, except upon a showing by clear and convincing evidence that it is in the best interest of the child for custody or visitation rights to be awarded. However, a court that awards such custody or visitation rights to a person convicted of sexual assault under N.J.S.[A.] 2C:14-2 shall stay enforcement of the order or judgment for at least 10 days in order to permit the appeal of the order or judgment and application for a stay in accordance with the Rules of Court.

> [N.J.S.A. 9:2-4.1(a) (emphasis added).]

As of August 28, 2020, defendant pleaded guilty to N.J.S.A. 2C:14-2 but had not been sentenced. Defendant was tentatively scheduled to be sentenced in December 2020. Absent a conviction, as opposed to a guilty plea, the judge concluded N.J.S.A. 9:2-4.1 was not triggered and declined to apply the clear and convincing standard to determine the best interest of Mary prior to granting parenting time to defendant.

11

Plaintiff cites Kercheval v. United States, 274 U.S. 220 (1927), in support of her argument a guilty plea is a conviction. In Kercheval, the United States Supreme Court held "[a] plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury[,] it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." 274 U.S. at 223. In Boykin v. Alabama, 395 U.S. 238, 242 (1969), the United States Supreme Court, citing Kercheval, stated "a plea of guilty is more than an admission of conduct; it is a conviction."

More recently, in Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 105-06 (1983), the United States Supreme Court analyzed whether the Gun Control Act of 1968, 18 U.S.C. §921 to §931, criminalizing the carrying of a firearm by someone previously convicted of a felony, applied to a person who pleaded guilty to a felony, but whose sentencing had been "deferred" by the sentencing court. In that case, the defendant pleaded guilty and, therefore, "[t]he usual entry of a formal judgment upon a jury verdict or upon a court's specific finding of guilt after a bench trial is absent." Dickerson, 460 U.S. at 111. Under those circumstances, the United States Supreme Court found "a plea of guilty and its notation by the state court, followed by a sentence of probation" equated to a "conviction" under the statute. Id. at 114.

12

A-0016-20

Similar to the United States Supreme Court's analysis of the Gun Control Act of 1968 in <u>Dickerson</u>, the Fathered by Rape statute supports the notion a guilty plea may be treated as a conviction because punishment will be imposed for a defendant's sexual assault of a minor. The Fathered by Rape statute was enacted to protect minor children from persons guilty of sexual assault under N.J.S.A. 2C:14-2. Here, during the plea hearing, defendant admitted he sexually assaulted his stepdaughter, and the criminal judge accepted the factual basis for his guilty plea. At the conclusion of the plea hearing, the judge scheduled sentencing for December 2020.

However, we need not determine the applicability of the Fathered by Rape statute in this case because circumstances have changed since September 2020 when plaintiff filed her notice of appeal. Defendant has since been sentenced on the criminal charges, and a judgment of conviction has been entered. The Department of Corrections website indicates defendant was sentenced on December 11, 2020 to a minimum sentence of seven years, two months, and twenty days. Defendant remains incarcerated at the present time.

As a result of defendant's conviction, the Fathered by Rape statute is applicable. Moreover, the judge's August 28, 2020 order allowed defendant parenting time "pending his incarceration." We are uncertain whether the judge

intended defendant's incarceration to operate as a "sunset provision," automatically terminating defendant's parenting time once defendant began serving his sentence, or whether the judge anticipated plaintiff would file a motion for termination of defendant's parenting time based on defendant's incarceration.

Given the changed circumstances, specifically defendant's conviction for sexually assaulting Beth, we vacate the parenting time orders and remand the matter to the Family Part to apply the Fathered by Rape statute and require any order allowing defendant parenting time be based upon "clear and convincing evidence that it is in the best interest of [Mary] for . . . visitation." On remand, the judge may consider Beth's statements concerning defendant's exercise of parenting time with Mary.[5]

We next address plaintiff's argument the judge erred in depriving her counsel access the DCPP's report, the expert therapist's report, and any other written evaluations regarding defendant's exercise of parenting time with Mary.

---

[5] We disagree Beth has a right to provide a victim's impact statement under N.J.S.A. 52:4B-36 and N.J. Const. art. 1, ¶ 22. The rights and remedies provided under N.J.S.A. 52:4B-36 concern the rights of "crime victims and witnesses" in criminal proceedings and are not applicable to family court proceedings. Plaintiff failed to cite any case law in support of Beth's "right" to provide a victim's impact statement in a family court matter.

We review a trial court's decision on a discovery matter for an abuse of discretion. Pomerantz Paper Corp v. New Community Corp., 207 N.J. 344, 371 (2011).

Rule 5:3-3 governs the appointment of experts in family cases. When a Family Part judge determines "disposition of an issue will be assisted by expert opinion, . . . the court may order any person under its jurisdiction to be examined by a physician, psychiatrist, psychologist or other health or mental health professional designated by it." R. 5:3-3(a). Subsection (f) of the rule provides:

> [A]ny finding or report by an expert appointed by the court shall be submitted upon completion to both the court and the parties. . . . The parties shall thereafter be permitted a reasonable opportunity to conduct discovery in regard thereto, including, but not limited to, the right to take the deposition of the expert.
>
> [R. 5:3-3(f).]

In accordance with this rule, plaintiff and her counsel must be accorded a "reasonable opportunity" to access all expert reports and evaluations. See Rente v. Rente, 390 N.J. Super. 487, 495 (App. Div. 2007) (reversing a family court order because the judge failed to comply with Rule 5:3-3 by providing a copy of the court-appointed expert's report and permitting an opportunity to depose or cross-examine the court-appointed expert). The current COVID-19 pandemic is not a basis for denying plaintiff and her counsel discovery. As our Supreme

15

Court recently stated, "[T]he Constitution must operate not just in the best of times, but also in the worst of times." State v. Vega-Larregui, __ N.J. __, __ (2021) (slip op. at 1).

Because we are remanding the August 28, 2020 order and all prior orders awarding defendant parenting time with Mary, the Family Part judge should allow plaintiff and her counsel, subject to an appropriate protective order, an opportunity to review any reports or evaluations regarding defendant's exercise of parenting time. Further, plaintiff is entitled to discovery prior to any parenting time determination.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16